1   John F. Mounier Jr. (SBN 48377)
2   **THE MOUNIER LAW FIRM**
    **Los Angeles & San Francisco**
3   9465 Wilshire Blvd., Ste. 300
    Beverly Hills, CA 90212
4   Tel: 1 (424) 284-4059
    E-mail: MLGJFM102@yahoo.com
5
6   Attorneys for L.S.F., by her
    Guardian ad Litem A.F.
7
8                 UNITED STATES DISTRICT COURT
9               NORTHERN DISTRICT OF CALIFORNIA
10

| | |
|---|---|
| 11  L.S.F., by her Guardian ad Litem A.F., | Case No. |
| 13                        Plaintiff, | COMPLAINT OF L.S.F., BY HER GUARDIAN AD LITEM A.F., FOR VIOLATIONS OF: |
| 14  vs. | |
| 15  THE COLLEGE BOARD | 1. AMERICANS WITH DISABILITIES ACT (42 U.S.C. § 12101, et seq.) |
| 16                        Defendant. | 2. UNRUH ACT (California Civil Code § 51 et seq.) |
| 17 _____/ | |
| 18 | 3. CONSTITUTIONAL RIGHT TO PRIVACY (California Constitution, Art. I, § 1) |
| 20 | 4. UNFAIR COMPETITION LAW (CA Business & Professions Code § 17200 et seq.) |
| 23 | 5. DECLARATORY JUDGMENT ACT (28 U.S.C. § 2201) |
| 25 | **DEMAND FOR JURY TRIAL** |

26       Plaintiff L.S.F., a high school student represented by her mother, A.F., who

27   is petitioning to be appointed as Guardian ad Litem, alleges through counsel, on

28

1  information and belief, the following facts and circumstances in support of

2  Plaintiff's cause of action against Defendant, which is currently based upon the

3  legal theories (pled in the alternative) referred to in this Complaint. The allegations

4  of facts and circumstances are illustrative of Defendants' conduct but are not meant

5  to be inclusive of every actionable fact and circumstance. Plaintiff may refer to and

6

7  rely upon additional facts and circumstances in the course of this lawsuit; Plaintiff

8  believes substantial evidentiary support will exist after a reasonable opportunity for

9  further investigation and discovery; and, Plaintiff may amend the legal theories

10 [and/or allegations of facts and circumstances], to conform to proof, seeking any

11 relief consistent with the case made by the complaint and embraced within the

12 issues, before a final judgment is entered:

13

14                        **INTRODUCTION**

15      1. This action arises out of The College Board's denial of Plaintiff L.S.F.'s

16 access to its scholastic aptitude test ("the SAT") – denial of access accomplished

17 through illegal discrimination and denial of disability accommodations to Plaintiff

18 L.S.F.

19

20      The discrimination and denial of accommodation was arbitrarily and

21 capriciously implemented and determined by **Jill Green,** The College Board's

22 Senior Director of Services to Students With Disabilities. Director Green has

23 untethered power to "judge" a student's disability and make decisions that will

24 affect the student's educational prospects and have a consequential impact for the

25 student's entire adult life.  As a result of Jill Green's continued denial of

26 accommodation to L.S.F., Plaintiff now files this action.

27

28

1  2. The College Board is a gatekeeper to higher education and employment

2  opportunities because it administers a standardized test widely utilized or required

3  for college admissions (the "SAT"). The College Board advises students, including

4  students with disabilities such as L.S.F., to:

5

6  # Show Colleges You're Ready

7  Register for the November SAT or SAT Subject Tests by October 3.

8

9  3.  The College Board represents that <u>it</u> is a "…mission-driven not-for-profit

10  organization that <u>connects students to college success</u>." (Emphasis added) The

11  College Board web site also represents [https://about.collegeboard.org/overview]:

12

13  "Founded in 1900, the College Board was created to expand access to

14  higher education. Today, the membership association is made up of

15  over 6,000 of the world's leading educational institutions and is

16  dedicated to promoting excellence and equity in education."

17  "Each year, the College Board helps more than seven million students

18  prepare for a successful transition to college through programs and

19  services in college readiness and college success — including the

20  SAT and the Advanced Placement Program. The organization also

21  serves the education community through research and advocacy on

22  behalf of students, educators and schools."

23

24  4. The College Board profits by "ginning up" the SAT results through

25  discrimination against students with disabilities and uses the higher SAT results to

26  gain a competitive advantage over is main (and virtually only) competitor ACT,

27

28

Inc., the purveyor of the SAT.

5.  The Rehabilitation Act  expressly requires colleges to conduct "disability-blind" admissions and forbids preadmission inquiries regarding disabilities – the result is that students such as L.S.F. must submit a SAT score without the benefit of access to accommodations that would enable L.S.F. to present her true performance potential.

6. The College Board not only affects the opportunities of students with disabilities in the highly competitive college admission process, it is also affecting their opportunities for future employment. Because of The College Board's conduct and discriminatory policies Plaintiff L.S.F. is entitled to injunctive and monetary relief.

## THE PARTIES

7.    A.F. is a resident of Marin County, California and is the legal parent of L.S.F.; A.F. is petitioning this court to appoint her as Guardian ad Litem for her daughter L.S.F.

L.S.F. is a 16-year-old student at Mt. Tamalpais High School, Mill Valley, Marin County, California; L.S.F. lives in Marin County, California. L.S.F. is Defendant THE COLLEGE BOARD is a corporation headquartered at 250 Vesey St., New York City, New York, United States.

## JURISDICTION AND VENUE

8. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this action arises at least in part under the laws of the United States.

1    This Court likewise has subject matter jurisdiction over this action pursuant

2  to 28 U.S.C. §1332 because the amount in controversy exceeds the sum or value of

3  $75,000.00 exclusive of interest and costs and the action is between Plaintiff L.S.F.

4  who is a citizen of a State different from The College Board.

5

6    9.  Venue with this Court is proper in this district under 28 U.S.C. §1332

7  because Plaintiff is a resident of this district and a substantial portion of the acts or

8  omissions giving rise to the claims herein took place in this district.

9    **The Value and Challenge of College Degrees for Students with Disabilities**

10    10. In today's America, a college degree is considered a necessary element

11  of successfully achieving the American dream.  It is viewed as a powerful indicator

12  of long-term economic security and social mobility, not to mention a path to active

13  citizenship and informed participation in our democracy.  Four decades of research

14  show that Americans with a college degree have higher family incomes than do

15  adults with only a high school diploma.  In fact, if a child from the bottom fifth of

16  America's poorest families earns a college degree, that child is remarkably four

17  times more likely to reach the top fifth of America's richest families.  Recent

18  studies have shown that these education-based income gaps are widening ever

19  further [Ron Haskins, et al., Promoting Economic Mobility By Increasing

20  Postsecondary Education, The Economic Mobility Project 7-10 (2009) ("Economic

21  Mobility")].

22    11. Unsurprisingly, these trends extend to Americans with disabilities.

23  College-educated Americans with disabilities have a significantly higher chance of

24  finding employment than those without a college degree.  The U.S. Bureau of

25

26

27

28

-5-

COMPLAINT FOR DISCRIMINATION - ADA, REHABILITATION ACT AND CA LAW VIOLATIONS
L.S.F., BY HER G.A.L. A.F. V. THE COLLEGE BOARD
U.S.D.C. NORTHERN DISTRICT OF CALIF. CASE NO.

Labor found that 26% of Americans with disabilities with a bachelor's degree were employed in 2016, compared to 16% of those with no more than a higher school degree. And the earning potential for college-educated Americans with disabilities is substantially greater. In fact, college-educated Americans with disabilities make twice as much as other Americans with disabilities, and nearly twice as much as their peers who fail to graduate college [Michelle Yin, et al., An Uneven Playing Field: The Lack of Equal Pay for People with Disabilities, American Institutes for Research 7 (2014)]. In short, a college degree is a powerful predictor of economic security and social mobility for Americans with disabilities, too.

12. Plaintiff L.S.F. is a college-bound student. She took or plans to take again The College Board SAT for purposes of meeting college admission requirements. Successfully earning a college degree will have a profound effect on L.S.F.'s long-term economic security, job prospects, and earning potential, as it does for all Americans.

Receiving the necessary financial and scholarship opportunities to pay for college will allow L.S.F. to be more successful in college and be more likely to complete her college degree on time. L.S.F.'s SAT results will affect her ability and potential to receive financial and scholarship opportunities.

13. Many Americans with disabilities have achieved enormous success after obtaining a college degree. Charles Schwab, the founder of the Charles Schwab Corporation and a multibillionaire, has suffered from dyslexia his entire life, forcing him to communicate in ways other than reading and writing. He is also a graduate of Stanford University. Mr. Schwab is now increasingly vocal about the

challenges he has faced as an American with a disability.  His recent advocacy is a
testament to the struggles he faced with dyslexia, which he describes as "painful."3
Other success stories of college-educated Americans with learning disabilities like
dyslexia or attention deficit disorder are a sign that Americans with disabilities can
succeed too.  These Americans includes John Chambers, the former chief
executive of Cisco Systems and a graduate of the University of Virginia,
who has been open about the years of therapy he underwent to cope with the
emotional pain of his dyslexia; David Neeleman, the former chief executive of
JetBlue Airways, a dyslexic, and a graduate of the University of Utah; and Craig
O. McCaw, the founder of McCaw Wireless and Clearwire Corporation, a
dyslexic, and a graduate of Stanford University.

14. Congress has recognized the importance of a college degree to
Americans with disabilities and the persistent discrimination they have faced in
education and employment by enacting the Americans with Disabilities Act of
1990 ("ADA"), and in the Americans with Disabilities Act Amendments Act of
2008. Congress recognized that "physical or mental disabilities in no way diminish
a person's right to fully participate in all aspects of society," yet found that
"discrimination against individuals with disabilities persists in such critical areas as
… education." 42 U.S.C. § 12101.  Colleges, universities and testing agencies like
The College Board are obligated under the ADA to ensure their programs and
services give full and equal access to students with disabilities. In 1992, the State
of California incorporated the ADA into the Unruh Act, with all the remedies
available to students thereunder.

15. The National Student Clearinghouse Student Research Center reports that as of 2015, one third of students who started college will not finish within six years. For students with disabilities, especially those who do not find a culture of inclusivity or adequate support systems in college, that number could be even higher. The College Board knows that the all-powerful rankings of higher education institutions by U.S. News & World Report and other publications take account of student retention and graduation rates.  The higher the student retention and graduation rates, the better the school's rankings, leading to more successful student and faculty recruitment and more pride among alumni (and annual giving dollars, too).  The College Board has an economic incentive to increase the SAT performance results by "weeding out" lower performance results achieved by students with disabilities who are the victims of illegal discrimination by The College Board.

16.  Due to the substantial costs of low retention, as well as the detrimental effects on their all-important rankings, colleges have turned to outside enrollment managers like The College Board and the student data they provide to tell them how to find and choose their students.

17. The Rehabilitation Act § 504 expressly forbids colleges from making pre admissions inquiries about disabilities, screening students based upon disabilities or limiting the number of qualified students they accept based upon disabilities. Labeling students based upon the existence of a disability and type of disability, and then allowing students to be identified, sorted and searched according to the disability is behavior that by definition violates the core purpose of the ADA.

1   18.  In 2002 the College Board published a study entitled "The Impact of
2   Flagging on the Admission Process." The 2002 study set out to investigate the
3   array of issues with respect to flagging test scores of students with a disability who
4   received an accommodation.  The conclusions are crystal clear: College admissions
5   offices want and use the information in their evaluation, and it is to the
6   disadvantage of students with disabilities.
7
8   Disability service providers responding to the College Board survey
9   uniformly condemned the practice of flagging.  Fearing disadvantage, disability
10  service providers believed flagging threatened a students' chances of admission
11  because "admission officers are more oriented to rejection than to admission,
12  particularly when it comes to candidates with disabilities."
13
14  In response to its 2002 study, the College Board announced that it would
15  stop flagging the test scores of disabled students who received testing
16  accommodations.
17  19.  As a result students like L.S.F. are in a classic squeeze – between a rock
18  (suffering from disability and impairment that limits a major life activity –
19  learning, concentrating, thinking - and being denied reasonable accommodation
20  necessary to achieve her true potential result in The College Board's SAT test) and
21  a hard place (having her disability and impairment affected SAT results being
22  submitted as a "raw" SAT result which admissions boards are legally authorized to
23  interpret as genuinely reflecting L.S.F.'s total and true potential to succeed in
24  college).
25
26  20.  Defendant The College Board:
27

28

Is a public accommodation or a person offering examinations related to applications for postsecondary institutions, in each case as defined by the ADA;

Administers the SAT pursuant to a State-sponsored program;

Collects disability from L.S.F. and other students with disabilities taking the SAT;

Does not offer or administer the SAT to L.S.F. and other students with disability in accordance with the provision of accommodations as required by Title II of the ADA;

Does not offer the SAT test to L.S.F. and other students taking the SAT in a manner accessible to persons with disabilities;

Does not select and administer the SAT to best insure that, when the examination is administered to an individual with a disability that impairs sensory, manual, or speaking skills, the examination results accurately reflect the individual's aptitude or achievement level, rather than reflecting the individual's impairment; and, without limitation,

Collects test registration fees, score report delivery fees from students with disabilities and from L.S.F.

/////////////////////////////////////////////////////////////////////////////////////

# CLAIMS FOR RELIEF

### COUNT ONE
### Against
### THE COLLEGE BOARD

### ADA VIOLATION – DENIAL OF ACCOMMODATION
(42 U.S.C. § 12189 and Implementing Regulations)

21.  As an independent Count of this Complaint, Plaintiff L.S.F., by her guardian ad litem A.F., incorporates all the allegations of this pleading, including re-allegation of paragraphs 1 – 50 as though separately alleged in this Count, which is alleged against all Defendants.

22.  Plaintiff tests in the 99th percentile of intelligence, but her performance and functioning is diminished because of one or more physical or mental disabilities that substantially limits, or limits, one or more major life activities.

Disabilities include Anxiety [F41] for two plus years, multiple learning disabilities, significant hyperactivity/impulsivity and inattention conditions, obsessive compulsive disorder [F42.9], and specific learning disorder with impairment in mathematics [F81.2].

Major life activities limited include concentrating, learning and thinking.

23.  The College Board offers the SAT, which is an examination related to applications for secondary or postsecondary education.

24.  The ADA requires that any person offering such examinations related "offer such examinations . . . in a place and manner accessible to persons with disabilities." 42 U.S.C. § 12189.

Implementing regulations require the testing agency to offer the examination

so that "[t]he examination is selected and administered so as to best ensure that, when the examination is administered to an individual with a disability that impairs sensory, manual, or speaking skills, the examination results accurately reflect the individual's aptitude or achievement level or whatever other factor the examination purports to measure, rather than reflecting the individual's impaired sensory, manual, or speaking skills." 28 C.F.R. § 36.309.

25. The College Board has violated its obligations under the ADA by maintaining a discriminatory and de facto policy of arbitrarily denying accommodations to individuals with disabilities, resulting in a score that does not accurately reflect L.S.F.'s aptitude or achievement.

26.  As a direct result of The College Board 's unlawful practices, L.S.F. has incurred or will incur irreparable injury, including lost educational and scholarship opportunities. Economic damages are projected at far over $100,000.00 all according to proof at trial. General and emotional stress damages have been legally caused by defendant, in an economic amount to be established according to proof at trial.

27. Unless and until The College Board is enjoined, The College Board will continue to discriminate against L.S.F. and other students with disabilities on the basis of their disability, demonstrating a real and immediate threat of repeated injuries and violations of their rights to full and equal access to the SAT and The College Board's programs and services.  Plaintiff L.S.F. lacks any adequate remedy at law, the balance of hardships favor Plaintiff, and the public interest would be served by an injunction.

BASED UPON THE LAW AND THE FACTS, Plaintiff requests all relief consistent with the case made by this complaint and embraced within the issues, including specifically the remedies and relief set forth below.

### COUNT TWO
#### Against
### THE COLLEGE BOARD

### UNRUH ACT – VIOLATIONS OF THE ADA
#### (California Civil Code § 51 et seq.)

28. As an independent Count of this Complaint, Plaintiff L.S.F., by her guardian ad litem A.F., incorporates all the allegations of this pleading, including re-allegation of paragraphs 1 – 50 as though separately alleged in this Count, which is alleged against all Defendants.

29. The Unruh Act provides that a "violation of the right of any individual under the federal Americans with Disabilities Act of 1990 … shall also constitute a violation of this section."  Cal. Civil Code § 51(f).

30. As here alleged, The College Board's disability discrimination is a violation of Plaintiff and the students with disabilities' ADA rights and is thus a violation of their rights under the Unruh Act.

31. As a direct result of The College Board's unlawful practices, Plaintiffs and the Subclass members have suffered actual damages in an amount to be determined at a jury trial, plus treble damages, but in any event no less than $4,000 in statutory damages for each and every offense and an award of attorney's fees.

32. As a direct result of The College Board's unlawful practices, Plaintiffs and the students with disabilities' have suffered emotional distress, anxiety, lost

1  opportunity, frustration, humiliation, and loss of dignity and self-esteem, in an

2  amount to be proven at trial.

3      33. Unless and until The College Board is enjoined, The College Board will

4  continue to violate the rights of Plaintiff and the students with disabilities' under

5  the ADA and the Unruh Act, demonstrating a real and immediate threat of repeated

6  injuries to the students with disabilities' and violations of their rights to full and

7  injuries to the students with disabilities' and violations of their rights to full and

8  equal access to the SAT and The College Board 's programs and services.

9  Members of the students with disabilities' lack any adequate remedy at law, the

10  balance of hardships favor members of the students with disabilities', and the

11  public interest would not be disserved by an injunction.

12      BASED UPON THE LAW AND THE FACTS, Plaintiff requests all relief

13  consistent with the case made by this complaint and embraced within the issues,

14  including specifically the remedies and relief set forth below.

15

16

17  

**COUNT THREE**
**Against**
**THE COLLEGE BOARD**

**CONSTITUTIONAL RIGHT TO PRIVACY**
**(Cal. Const. § 1)**

18

19

20

21      34. As an independent Count of this Complaint, Plaintiff L.S.F., by her

22  guardian ad litem A.F., incorporates all the allegations of this pleading, including

23  re-allegation of paragraphs 1 – 50 as though separately alleged in this Count,

24  which is alleged against all Defendants.

25      35. Plaintiff L.S.F. has, and students with a disability have, a legally

26  protected privacy interest in her disability status and any health or medical

27

28

condition.  Plaintiff's rights under the California constitution guarantee her due process of law and an expectation of privacy.

36.  Plaintiff L.S.F. has, and students with a disability have,  a reasonable expectation of privacy that The College Board would not disclose their disability status in a manner that violates the ADA and the Unruh Act.  There is no permissible use of such information by postsecondary institutions under existing law in recruitment efforts and admissions decisions, and no parental consent to collect and disclose such information was ever obtained.

37. The College Board collects information about students' disability status and health and medical conditions.  The College Board's discriminatory policy of denying accommodation to students with disabilities, including Plaintiff, compels self-disclosure of Plaintiff's private medical information in order to protect her legal and constitutional rights. It is an egregious breach of social norms for The College Board to assist postsecondary institutions with obtaining disability, health, and medical information about students for the purpose of recruitment or admissions.

38.  As a direct result of The College Board 's unlawful practices, Plaintiff and students with a disability have, have suffered emotional distress, anxiety, lost opportunity, frustration, humiliation, and loss of dignity and self-esteem, in an amount to be proven at trial.

39.  Unless and until The College Board is enjoined, The College Board will continue to violate the privacy rights of the Plaintiff and students with a disability ,

under the California Constitution, demonstrating a real and immediate threat of repeated injuries to the Plaintiff and students with a disability have,. Plaintiff and students with a disability lack any adequate remedy at law, the balance of hardships is in their favor, and the public interest will be served by an injunction.

BASED UPON THE LAW AND THE FACTS, Plaintiff requests all relief consistent with the case made by this complaint and embraced within the issues, including specifically the remedies and relief set forth below.

## COUNT FOUR
### Against
### THE COLLEGE BOARD

### UNFAIR COMPETITION LAW
### (Business & Professions Code § 17200 et seq.)

40. As an independent Count of this Complaint, Plaintiff L.S.F., by her guardian ad litem A.F., incorporates all the allegations of this pleading, including re-allegation of paragraphs 1 – 50 as though separately alleged in this Count, which is alleged against all Defendants.

41. California Business & Professions Code § 17200 et seq., also known as the California Unfair Competition Law ("UCL"), prohibits acts of "unfair competition," including any unlawful, unfair, fraudulent, or deceptive business act or practice as well as "unfair, deceptive, untrue or misleading advertising."

42. By engaging in the unlawful conduct alleged above, The College Board has engaged in unlawful business acts and practices in violation of the UCL by violating state and federal laws including but not limited to the ADA, Unruh Act, and the California Constitution's right to privacy.

43. In addition to being unlawful, The College Board 's acts, conduct and practices as alleged above are unfair. The College Board's policy and practice of collecting disability information and systematically denying accommodation to students with disabilities, including Plaintiff, is a substantial injury to Plaintiff, has no benefit to Plaintiff, and could not be avoided by Plaintiff if Plaintiff and students with disabilities wished to participate in The College Board 's programs and services on an equal basis as other students.

44. In addition to being unlawful and unfair, The College Board's acts, conduct and business practices as alleged above are fraudulent and/or deceptive. The College Board used confidential student disability data and marketed its programs and services as assisting postsecondary institutions and scholarship programs to identify categories of students and to connect students to colleges, but actually excluded Plaintiff and students with disabilities them from their recruitment and admissions efforts for reasons like student fit and desirability.

45. As a direct and proximate result of The College Board 's unlawful, unfair and fraudulent business practices, Plaintiffs and the students with disabilities have been injured in fact. They participated in The College Board Test or the The College Board 's programs and services in reliance on The College Board 's false and misleading advertising and representations to the general public regarding the benefits of those programs and services, and they would not have participated in the SAT had they known The College Board would seek to collect, use, disclose, and otherwise deny their full and equal participation in The College Board's programs and services.

46. The College Board 's unlawful, unfair and fraudulent business practices as alleged above present a continuing threat to Plaintiffs, students with disabilities and members of the public because The College Board persists and continues to engage in such practices and will not cease doing so unless enjoined or restrained by this court.

47. Under California Business & Profession Code § 17203, Plaintiffs, on behalf of themselves, Subclass members and members of the general public, seeks an order of this Court:

a) Enjoining The College Board from continuing to engage, use, or employ any unlawful, unfair and/or deceptive business act or practice and any act prohibited by California Business Code § 17200 et seq.; and

b) Restoring all monies that may have been acquired by The College Board as a result of such unlawful, unfair or deceptive acts or practices.

BASED UPON THE LAW AND THE FACTS, Plaintiff requests all relief consistent with the case made by this complaint and embraced within the issues, including specifically the remedies and relief set forth below.

**COUNT FIVE**
**Against**
**THE COLLEGE BOARD**

**DECLARATORY RELIEF**
**(28 U.S.C. § 2201)**

48.  As an independent Count of this Complaint, Plaintiff L.S.F., by her guardian ad litem A.F., incorporates all the allegations of this pleading, including re-allegation of paragraphs 1 – 50 as though separately alleged in this Count,

1  which is alleged against all Defendants.

2      49.  An actual controversy now exists between Plaintiffs and The College

3  Board.  Among other things, Plaintiffs and The College Board dispute whether The

4
   College Board's policy of systematically denying accommodations to students with
5
   disabilities, including Plaintiff, are violations of Plaintiff's rights under the ADA,
6
7  Unruh Act, California Constitution and the UCL.  These disputes are definite and

8  concrete and involve the legal relations of parties having adverse legal interests.

9      49.  Plaintiff, on behalf of herself and the students with disabilities, desire to

10  have a judicial determination of the rights and obligations of themselves and The

11
    College Board.  A declaratory judgment is appropriate and in the interests of
12
    justice.
13

14      50.  Specifically, Plaintiff seek a declaration that The College Board's

15  acquisition and disclosure of disability information as described herein, as being

16  misused, are violations of the rights of Plaintiff's and the students with disabilities

17
    under the ADA, Unruh Act, California Constitution and UCL.
18
        BASED UPON THE LAW AND THE FACTS, Plaintiff requests all relief
19
20  consistent with the case made by this complaint and embraced within the issues,

21  including specifically the remedies and relief set forth below.

22  /////////////////////////////////////////////////////////////////////////////////////////////////////////////////////////

23

24

25

26

27

28

1

## PRAYER FOR RELIEF

2

3      Plaintiff, on her own behalf and on behalf of the students with disabilities,

4   respectfully pray for judgment against The College Board as follows:

5      1. Enter judgment against The College Board and in favor of Plaintiff for all

6   causes of action, including economic damages according to proof of each offense;

7      2. Enter injunctive relief requiring The College Board:

8

9              a) to cease and desist from the continuing violations of the

10   rights of Plaintiff and students with disabilities under the ADA, Unruh Act,

11   California Constitution, and California's Unfair Competition Law;

12              b) to implement reasonable and appropriate corrective measures

13   to redress injuries to Plaintiff and students with disabilities; and

14              c) to require The College Board to take or not take other actions

15   determined to be necessary to remedy or cease violations of the rights of

16

17   Plaintiff and students with disabilities.

18      3. Award treble damages and restitution to Plaintiff, but in no case less than

19   the minimum statutory damages under the Unruh Act of $4,000 for each and every

20   offense;

21      4. Order The College Board to disgorge all amounts that it has improperly

22   received and retained through its misconduct alleged herein;

23

24      5. Award pre-judgment and post-judgment interest to the extent required by

25   law;

26      6. Award Plaintiff reasonable attorneys' fees and costs to the extent

27   permitted by law;

28

7. Grant appropriate declaratory relief;

8. Appoint an ADA monitor to ensure The College Board 's full compliance with the ADA; and

9. Grant such further relief as the Court deems appropriate.

DATED:  October 4, 2019

**THE MOUNIER LAW FIRM**

By: _____

　　　John F. Mounier Jr.
　　　*Attorney for L.S.F.,*
　　　*by her Guardian ad Litem A.F.*